UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

JORDANA E.,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

———————————————————————

**DECISION AND ORDER**

19-CV-1634S

    1.    Plaintiff Jordana E.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income benefits under Title XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her application with the Social Security Administration on September 21, 2016.  Plaintiff alleged disability beginning September 1, 2016, due to bipolar disorder with psychosis, major depressive disorder, post-traumatic stress disorder, and anxiety disorder.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On November 5, 2018, ALJ Maria Herrero-Jaarsma held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Kenneth Jones

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

appeared and testified.  (R.[2] at 34-57.)  At the time of the hearing, Plaintiff was 24 years old with a limited education.  She had no past relevant work for substantial gainful activity (R. at 24).

4.     The ALJ considered the case *de novo* and, on November 15, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 10.)  Plaintiff filed a response on August 6, 2020 (Docket No. 11), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion (Docket No. 8) is denied, and Defendant's motion (Docket No. 10) is granted.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's November 15, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not,

the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date. (R. at 14.)  At step two, the ALJ found that Plaintiff has

the following severe impairment:  bipolar disorder with psychosis, major depressive disorder, PTSD, and anxiety disorder.  Id. at 14.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 15.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform all exertional levels except Plaintiff cannot perform jobs that require driving or operating other machinery.  Plaintiff can understand, carry out, and remember simple, routine, and repetitive tasks.  She also can work in a low stress environment. Plaintiff can perform work that involves occasional contact and interaction with supervisors and co-workers and incidental contact with the public.  Plaintiff can work independently or do work that can be done generally isolated from other employees. (R. at 18.)

13.     At step four, the ALJ found Plaintiff had no past relevant work.  (R. at 26.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 27.)  Since Plaintiff's ability to work was compromised by nonexertional limitations, the ALJ posed hypotheticals to the vocational expert who opined that a claimant similar to Plaintiff in age, education, and work experience could perform such jobs as addresser (sedentary exertion), linen room attendant (medium exertion), and garment sorter (light exertion).  (R. at 27.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 27.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to rely upon any opinion in finding the RFC (Docket No. 8, Pl. Memo. at 1, 11-16).   The ALJ assigned partial weight to the opinion of

Dr. Michael Mungillo from Spectrum Human Services from June 27, 2017 (R. at 350-51, 23), but Plaintiff contends the record was incomplete because it did not contain Dr. Mungillo's treatment notes (Docket No. 8, Pl. Memo. at 1, 16-22). The ALJ notes that it is unclear if Dr. Mungillo treated Plaintiff, so he did not include in the longitudinal history (R. at 24; Docket No. 8, Pl. Memo. at 20-22). Plaintiff also faults the ALJ in weighing other source evidence (Docket No. 8, Pl. Memo. at 1, 23-26). Plaintiff concludes that the ALJ should have recontacted treating physician's assistant, Sarah Gallagher (id. at 26-27; R. at 24). For the reasons that follow, this argument is rejected.

15.    Defendant argues that Dr. Mungillo was a family medicine physician and not a psychiatrist (Docket No. 10, Def. Memo. at 7; see also Docket No. 11, Pl. Reply Memo. at 3 n.1 (conceding that the doctor was a primary care provider), that the doctor noted Plaintiff's mental health symptoms treatment was by Spectrum Health Services (Docket No. 10, Def. Memo. at 18).

16.    Occasionally, the records in Social Security appeals contain discrepancies in the names of treating or examining sources. Most times, this is not material. Here, however, the illegible signature of Dr. Mungillo (see Docket No. 8, Pl. Memo. at 17 & n.2) without the name typed or printed clearly and the lack of other records from him is at the forefront of Plaintiff's argument.

17.    The ALJ refers to the doctor as "Dr. Murjillo" (R. at 23, 24, citing R. at 350-51). Plaintiff initially cites him as "Dr. Murjillo" (e.g., Docket No. 8, Pl. Memo. at 9, 12, 16-17, 17 n.2). Defendant calls him "Dr. Murgillo" (Docket No. 10, Def. Memo. at 7, 14, 16, 17, 18-19, 20) and "Dr. Mungillo" (id. at 19 n.4). In her Reply, Plaintiff admits her error and settles on "Dr. Mungillo" (Docket No. 11, Pl. Reply at 3 & n.1, 4).

18.     Regardless of the spelling, Dr. Mungillo's name only comes up in that employability assessment for himself and Spectrum Human Services (R. at 350-51).  In opining that Plaintiff cannot return to work due to her mental health issues, Dr. Mungillo stated there that he treated Plaintiff for five years (R. at 350, 351).  When asked on the evaluation whether Plaintiff had a severe impairment that lasts for at least twelve months and to explain that impairment, Dr. Mungillo only answered that Plaintiff had a severe impairment (R. at 351).  There is no attachment or reference to other medical records to support Dr. Mungillo's conclusion.

19.     As Defendant notes (Docket No. 10, Def. Memo. at 19), the medical record does not contain materials from Dr. Mungillo, or records from this doctor practicing either at Spectrum Human Services or UBMD, to support his opinion.  Treatment notes from Spectrum Human Services (e.g., R. at 221-327, 328-34, 871, 876) and her evaluation at UBMD Family Medicine Clinic in October 2016 (R. at 337; see Docket No. 8, Pl. Memo. at 5-7) do not indicate Dr. Mungillo had any role in examining or treating Plaintiff.

20.     Plaintiff argues that this shows missing treatment notes that require remand (Docket No. 8, Pl. Memo. at 20).   Plaintiff's counsel conceded that the record was complete before the ALJ (R. at 36-37, 216-17; Docket No. 10, Def. Memo. at 16).  Plaintiff did supplement the record following the hearing (see R. at 32, 482-938), but that submission did not include records from Dr. Mungillo or UBMD Family Medicine Clinic to fill the gap Plaintiff now argues exists (cf. Docket No. 11, Pl. Reply Memo. at 4).  She did not supplement the record further before the Appeals Council or raise the gap she now argues here (Docket No. 10, Def. Memo. at 17).  Finally, she did not argue that she had difficulties in obtaining records from Dr. Mungillo to warrant a remand.  The ALJ met the

obligation to determine the completeness of the record by inquiring about missing medical records (R. at 36-37, 216-17), <u>Melton v. Colvin</u>, No. 13CV6188, 2014 WL 1686827, at *8 (W.D.N.Y. Apr. 29, 2014) (Telesca, J.) (Docket No. 10, Def. Memo. at 18).

21.     Plaintiff has not shown what Dr. Mungillo's treatment notes would show or allege any difficulty in retrieving those notes.  The current record is unclear what role Dr. Mungillo played in evaluating Plaintiff, despite the doctor's claim of treating Plaintiff for five years.  The ALJ thus had substantial evidence to diminish the value of Dr. Mungillo's opinion.

22.     The ALJ then gave partial weight to the consultative evaluation of Dr. Susan Santarpia (R. at 25).  Dr. Santarpia found that Plaintiff was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and relating adequately with others (R. at 345, 25).  The ALJ gave this opinion partial weight because she concluded Dr. Santarpia understated Plaintiff's ability to maintain attention and concentration and relating adequately with others and was inconsistent with the medical evidence and Plaintiff's testimony, especially the record after the December 2016 evaluation (R. at 25).

23.     The ALJ then gave little weight to the opinion of Dr. Hillary Tzetzo, that Plaintiff's psychiatric symptoms did not have significant impact on her daily functioning (R. at 63, 25), because Dr. Tzetzo did not examine Plaintiff and the opinion was not consistent with the medical record (R. at 25-26).

24.     There was substantial evidence for the ALJ to render the mental RFC for Plaintiff's claim.  The ALJ had medical opinions, including from consultative examiners,

and the medical record to support her RFC.  Thus, her motion for judgment (Docket No. 8) on this ground is denied.

25.     Plaintiff argues that the ALJ improperly discounted the opinions from therapist Martha Blackstock (R. at 380-84, 24-25), nurse practitioner Walter Warriner (R. at 378-79, 463-64, 23), and physician assistant Sarah Gallagher (R. at 360, 24), depriving the ALJ of any medical opinion to support the mental RFC (Docket No. 8, Pl. Memo. at 8-9, 22-27).

26.     Therapist Blackstock assessed Plaintiff in September and October 2018, finding Plaintiff's GAF score (R. 383, 470, 24).  The ALJ diminished this finding because it was not a functional assessment of Plaintiff's mental abilities (R. at 24).  Blackstock treated Plaintiff only on two occasions (Docket No. 10, Def. Memo. at 22).  She noted that she was able to care for her children (R. at 481) despite her anxiety.  Defendant argues that Blackstock's observations were inconsistent with her opinion that Plaintiff was unable to follow simple instructions (Docket No. 10, Def. Memo. at 22; R. at 380, 384, 473).

27.     On October 2, 2018, nurse practitioner Warriner examined Plaintiff (R. at 378-79).  While diagnosing Plaintiff with PTSD, bipolar disorder, general anxiety disorder, and being a mother of a toddler and an infant (causing her anxiety), Warriner found that Plaintiff had normal attention and concentration and other aspects were normal (R. at 378-79).  Warriner treated Plaintiff only that single occasion (Docket No. 10, Def. Memo. at 23).

28.     From Warriner and Blackstock's findings and opinions, Plaintiff's mental condition stems from the stresses of parenthood.  Despite this, they found that Plaintiff

had normal responses.  These evaluations provide little as to functional limitations for Plaintiff's employment.

29.    Physician assistant Sarah Gallagher reported on August 3, 2018, that Plaintiff had continued depression and anxiety and social phobia (R. at 360, 24).  Plaintiff saw Ms. Gallagher again on August 17, 2018, who noted that symptoms continued (R. at 362).  On August 20, 2018, Ms. Gallagher reported that Plaintiff suffered from depression and anxiety and was treated with medication (e.g., R. at 353, 358).  That one-paragraph opinion letter indicated Plaintiff's diagnosis and medication and notes her inability to hold a job.  The ALJ gave this opinion little weight because she was not an acceptable medical source and did not provide a functional assessment (R. at 24).

30.    Plaintiff next argues that the ALJ erred in failing to recontact physician assistant Gallagher as a non-acceptable source to obtain a functional assessment (Docket No. 8, Pl. Memo. at 22, 26; R. at 24).  Since the ALJ did not assign controlling weight to any opinion, Plaintiff concludes that the RFC lacks substantial evidence and required the ALJ to recontact Ms. Gallagher to augment the record (Docket No. 8, Pl. Memo. at 26).

31.    Ms. Gallagher reported that Plaintiff had long term difficulty keeping jobs due to her mental condition (R. at 353) without outlining functional limitations.

32.    Under the pertinent Social Security regulation for development of the record as of Plaintiff's application, 20 C.F.R. § 416.920b (2013) (Docket No. 10, Def. Memo. at 28), the ALJ need not further develop the record unless a crucial issue is undeveloped and the available evidence does not provide an adequate basis to determine the merits of Plaintiff's claim, id., § 416.920b(b)-(c) (id.).  The record here provides an adequate

basis to determine the merits of her claim.  This record is replete of diagnosis of anxiety and findings that Plaintiff had few vocational limitations.

33.     Plaintiff's motion for judgment (Docket No. 8) on the ground of the consideration of the identified non-medical source opinions is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        March 4, 2020
              Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                    United States District Judge